I'll call Benamou v. Wells Fargo Bank N.A., Mr. Baker. May it please the Court, my name is Timothy Baker. I represent appellants Georges Benamou, Dominique Iphigen, and Michelle Tustis. Basically I want to talk about two main issues today. First is just to clarify the timeline of how this litigation moved and motion for summary judgment, how fast it actually moved once it entered federal court. And second, the litigation of a lien on its face, particularly a Texas home equity loan. So this case was filed in state court in 2015. It initially got removed to federal court and then remanded because the diversity of citizenship wasn't clear on the cleanings. But once that was cleared up, it was brought back to federal court in February of 2016. In March of 2016, the first motion for summary judgment was filed. Mr. Baker, we've read the briefs, so we pretty well know what happened. You can emphasize certain things. Okay, what I want to emphasize for that motion for summary judgment was the issues involved in that were the Texas constitutional issues with the lien and then what the two motions had in common were fraud and statute of limitations. At that time, the counterclaim for equitable subrogation wasn't in the first motion for summary judgment, even though it had been brought as a counterclaim in February, shortly before it was brought to federal court. And all this was done before not only a scheduling order for the federal court, but before there was a joint status report due, a federal case. So in May 2016, the Texas Supreme Court came out with a case that helped us out on the constitutional issues and the issues that were there. In fact, in the second motion for summary judgment, Wells Fargo basically conceded that the primary lien that was at dispute was likely in violation of the Texas constitution and that one of the spouses of one of the parties didn't sign on to the loan. So that's when they brought their equitable subrogation claim into their amended motion for summary judgment. So this is the first point it came, and so basically the timeline to respond was to follow the response. I want to move on briefly to the validity on the face of the lien. So both liens are Texas home equity loans. And the first one, the one where they're asking for equitable subrogation was in 2004. The borrowers on that were, in this particular case, George A. Benomo, the other two appellants weren't a party to that transaction, although before they got to the second lien, I'll concede that they had an interest in the property. So on that particular lien, Wells Fargo and the court below basically claimed that the lien was valid on its face, but it is a Texas home equity loan. And Texas, as generally known, was the last state to allow for home equity loans just in the Texas constitution. And so I think we should urge caution in assuming a validity on its face. There are a couple of things in the order proposed with their motion for summary judgment. They were asking for non-judicial foreclosure, which for home equity loans in Texas, there's a judicial process to foreclose, and it's not non-judicial. So here you have basically two Texas home equity liens, one presumed invalid under the Texas constitution, the second one, which is actually the first one they're relying on for equitable subrogation. That lien, the need of trust in it, had a clause for non-judicial foreclosure, which they relied on. Secondly, it had an amount on it. And so one of the questions would be on the amount, is that in this particular case, is that a ceiling on what they're allowed to get? In other words, in the record, there's concessions that my clients made payments on the second home equity loan. They get a credit for that under equitable subrogation, or is it just the full, well, I'll just call it $250,000 that it recovered. So there are issues on that. Was the validity of the 2004 lien raised before the magistrate judge? In my response to the motion for summary judgment, I believe the validity of that lien specifically wasn't raised at the time. I felt the two main issues were the items that were common issues in both motions for summary judgment, which was fraud and statute of limitations. I did make some arguments, not on the validity, but some legal arguments of why. It's basically against equitable subrogation in this situation. But the actual validity, or if there were any defenses or constitutional issues at that point weren't there. At the time, I think in our original petition, we raised, going to the first thing, we raised several constitutional issues. The one that I think that was clear on is not common to both liens was that one of the parties, their spouse, didn't sign the lien. But we had others of whether the loan amount was more than 80%. I will concede that weren't raised in my response to the motion for summary judgment. But I feel, given the pace of this case, that an amended answer should have been allowed for when I raised it after the magistrate's decision. With that, if there's any more questions, I'm willing to take it. You've saved time for rebuttal, Mr. Baker. Thank you. Thank you. I'll let you pronounce your last name so that I won't mess it up. It's Scout, Your Honor. Scout? Yes, sir. May it please the Court. Good morning, Your Honors. My name is Marcy Scout, and I represent the appellee, Wells Fargo. This case presents the issue of what a lender needs to establish to be entitled to judgment on its claim that it is equitably subrogated to a prior lien paid off with the proceeds of a second loan. Here, after it became apparent that there was an issue that made its 2006 home equity lien invalid, Wells Fargo conceded that point and sought to preserve its lien based on equitable subrogation principles because the proceeds of the 2006 lien were used to pay off a pre-existing 2004 home equity lien. Wells Fargo filed a motion for summary judgment relying on three key pieces of evidence. The evidence was a certified copy of the 2004 lien that had been recorded in the real property records of Dallas County. The second was a HUD-1 settlement statement that showed that $248,000 of the loan proceeds from the 2006 loan were used to pay off the pre-existing lien. And the third piece of evidence was the contemporaneous release of the 2004 lien. Based on that summary judgment evidence, the magistrate judge recommended granting Wells Fargo its summary judgment on equitable subrogation. Appellants objected to the magistrate judge's recommendation, simply asserting that the recommendation failed to include an express finding on validity. However, they offered no argument as to why the 2004 lien would have been invalid and certainly offered no evidence to support those arguments. The district court granted Wells Fargo summary judgment, finding that the 2004 lien was valid on its face and appellants had not offered any specific argument or evidence to create a genuine issue of material fact. That judgment should be affirmed. First, as the court has noted, any issues about the validity of the 2004 lien were not raised before the magistrate judge and I contend that that means those issues have been waived. Second, even if the issue were not waived, Wells Fargo met its summary judgment burden. As to waiver, this court has made it clear that where legal arguments are not made before a magistrate issues a report and recommendation, those arguments are waived. Here, equitable subrogation was put into play in this case in October 2015 when Wells Fargo first filed its answer. Before Wells Fargo removed to federal court for the second time in February of 2016, it asserted a counterclaim for equitable subrogation in the alternative if there were any merit to the arguments about the validity of the 2006 lien. When we got back to federal court in February, we filed a motion for summary judgment relatively quickly and as to the constitutional issues with the 2006 lien, the primary argument we asserted was statute of limitations based on this court's ruling in Priester. While that motion was pending and because we felt that we would be able to defeat those constitutional claims, we didn't rely on it. In May of 2016, the Texas Supreme Court issued a ruling that overruled Priester, disagreed with Priester, and said that a statute of limitations did not apply to claims about constitutional invalidity of home equity loans in Texas. As a result, we had to retool our motion for summary judgment because now we had a situation where we were going to have to concede the invalidity of the 2006 lien, which means we had to rely on equitable subrogation, which is what we did in our motion. In response to the motion, they didn't raise any issues about the invalidity of the 2004 lien. They didn't file a motion seeking a continuance of their response deadline to assert those arguments or develop discovery on those issues. It would be difficult to see why they would need discovery on those issues anyway, given that Mr. Benamou was the borrower on that loan and presumably if there were any problems with the 2004 loan, he would have been privy to that knowledge. So by failing to raise that issue and waiting to raise it until after the magistrate judge had issued her report and recommendation, the appellates have waived that issue. Even if that issue weren't waived, the district court correctly applied the summary judgment standard. The position appears to be that in order for a lender to have an equitable subrogation lien premised on a pre-existing home equity lien, the lender, to prove validity, has to prove the laundry list of all the requirements under the Constitution. That position is inconsistent with Texas law and would impose a burden that is unworkable from a practical standpoint. As to the consistency with Texas law, in LaSalle, the Texas Supreme Court made it clear that where a lender pays off a pre-existing lien, the lender steps into the shoes of the original lender. That means the lender has the same rights as the original lender and is subject to the same defenses as the original lender. That also means if the lender is stepping into the shoes, that the same burden framework should apply. Thus, to determine the proper summary judgment framework, we need to consider how this dispute would have played out between the borrower and the original lender. In a typical home equity dispute between a borrower and the original home equity lender, the original lender would meet its burden by presenting a facially valid security instrument without affirmatively demonstrating all of the laundry list of the Constitutional requirements. The burden would then shift to the borrower to raise specific requirements that had not been met. In fact, the 14th Court of Appeals has rejected the argument that a lender would have to affirmatively show compliance with all Constitutional prerequisites and requirements for home equity loans. Instead, the burden is on the borrower to plead and prove alleged violations in the home equity lien that would render it constitutionally invalid. They are treated in the nature of an affirmative defense. The Court recognized that this ensures that, quote, judicial resources are spent litigating the few requirements that are contested rather than the many that are not. That is from the Wilson v. Ames case, 2007 Westlaw 307-2054. I would also note that the Court impliedly recognized this affirmative defense type framework in Aquin v. Berry, which is a 2017 opinion from this Court that dealt more with the limitations issue with home equity liens. But in that case, the issue of the invalidity of the home equity lien was raised through the use of affirmative defenses. Accordingly, if Wells Fargo is going to be put in the shoes of the original lender, it would establish this lien by coming forward with evidence of the recorded security instrument. The burden would then have shifted to the appellants to raise issues of invalidity and present evidence on those issues. The appellants failed to do so. They did not assert any reason that the lien was invalid, any specific Constitutional lien, or any evidence to support that assertion. Requiring a borrower like the appellants to plead and prove an alleged Constitutional deficiency in the original lien is consistent with the framework that would apply outside the equitable subrogation context. In addition, it is consistent with the Texas Supreme Court's policy underlying equitable subrogation. In LaSalle, the Texas Supreme Court recognized that permitting equitable subrogation rights to preserve a lender's lien, even where the issues involve an invalid home equity lien, protects the homestead rights of Texans. The court stated, throughout our jurisprudence, we have stressed that the doctrine of equitable subrogation works to protect homestead property. Without equitable subrogation, lenders would be hesitant to refinance homestead property due to increased risk that they might be forced to forfeit their liens. The ability to refinance provides homeowners the flexibility to rearrange debt and avoid foreclosure. If a lender were required to affirmatively establish compliance with each of those laundry lists in the Texas Constitutional provisions regarding home equity loans, lenders would be less likely to approve refinancing of home equity loans, which would limit the protection of homestead rights available through refinancing. Well, but that would be consistent with the fact that, as Mr. Baker pointed out, Texas is very strict about allowing these loans to occur, even where the borrowers wish to engage in those loans. Yes, Your Honor, and I will fully admit that Texas is very protective of homeowners with regard to home equity loans. But the issue is, how do those protections play out? And the way we see those is that if a facially valid lien is submitted, the burden shifts to the borrower to point out places where they think there are violations. And here, that was not done. And to impose an obligation like the appellants are suggesting would put a higher burden on an equitable subrogation lender than what we see placed on an original lender in the case law. Because in the case law, the original lender is only required to submit the facially valid lien, and then it's up to the borrower to assert issues that would make it invalid. But it would apply an even higher practical burden in the equitable subrogation context. Think about the practical realities of a lender who is asserting an equitable subrogation claim. So they were not the original lender, which means they are going back to having to prove issues about a loan they had nothing to do with. Well, that happens all the time, doesn't it? It does happen all the time. Sometimes they can't even find the paper. I understand, Your Honor. But in the situation where it's a situation where the loan has itself been transferred, what transfers with that loan, in most cases, is the loan file. But an equitable subrogation lender doesn't get the benefit of the transfer of the loan file when they pay off the lien. Instead, they pay off the preexisting lien, the lien is released, and they never get to see the contents of that loan file from, in this case, the 2004 lien. Think about how that would play out in the course of trying to prove this checklist. The Constitution requires things like the application had to be submitted 12 days before closing. Disclosures had to be provided 12 days before closing. A copy of the application had to be provided to the borrower a day before closing. The day before closing, the borrower had to be given a laundry list of the closing costs. The closing costs can't be more than 3 percent, now 2 percent under the new amendments to the Constitution. The closing had to have occurred at an approved place. All of those sorts of issues that deal with the closing of the loan are issues that will only appear in the original loan file. Those are things that you cannot look at the recorded deed to see. Instead, the equitable subrogation lender would have to have access to the original loan file. In this case, that original loan file would have been in 2006, at which time the 2004 lien was paid off. In 2015, then, is the first time that issues about the validity of the 2006 lien were raised. That's the first time equitable subrogation even comes into any kind of thought process. At that point, you're 11 years past the origination of the loan and 9 years past the payoff of the loan. So it's iffy that the loan file for this 2004 would even still exist. That creates a high practical burden on a lender claiming equitable subrogation. And that's not to say, Your Honors, that Wells Fargo is seeking special treatment. We understand that if a borrower, in that scenario where we assert equitable subrogation, if a borrower raises a specific deficiency, a specific violation, if they claim that the 3 percent fee rule was not met, we understand the issue will be put in and when they bring forward evidence of that, we're going to have to rebut that. We understand that. But in a situation like this, where that issue is never even raised, they never make an argument about why it was invalid, they don't present any evidence, there's nothing to shift that burden back to us. As a result, we met our summary judgment burden by bringing forward the evidence of the facially valid 2004 lien, which was recorded in the real property records. The HUD-1 statement, which shows that money is going to be used to pay off that lien, which Mr. Benamou signed on, by the way. He signs acknowledging that the $248,000 is going to be used to pay what is apparently a valid and existing lien. He didn't contest that back in 2006, certainly at all. That evidence met Wells Fargo's burden. The burden then shifted to appellants to raise a genuine issue of material fact by arguing a specific invalidity and bringing forward evidence to support that. And when they didn't do that, they did not raise a genuine issue of material fact, and accordingly, summary judgment was properly granted to Wells Fargo on the equitable separation claim. I have time remaining. I'd be happy to answer any further questions you might have. Otherwise, I'll cede the time. Yes, thank you, Ms. Scout. Thank you. Okay, Mr. Baker, you saved time for a bell. Okay, well, I agree in general with or sympathize with the bank's position in that going back to something that happened in 2004 that perhaps they didn't have anything to do with, and as you indicated, Judge Smith, you know, even in a 2006 loan, they may have not had anything to do with it at the time. It creates a burden. It does create burdens on both parties. And I think I agree in general that having to prove up the whole laundry list for a valid lien is probably not the correct policy either. But in this case, we had on the active lien had specific, raised specific constitutional issues. And so instead of having to prove like all the real detail closing issues, maybe the sort of the same issues that were raised in the constitutional argument on the first lien wouldn't need to be shown on the second to be valid. So I'm not arguing that every part of the laundry list should be considered, but I think some parts of the list are more important than others and that a lender would need to show that it was valid. One other brief point, again, the payment on the second lien, the 2006 lien, was acknowledged by the bank, which is sort of evident that they controversed their own claim for the full amount of the direct capital subrogation claim. With that, any other questions? All right. Thank you, Mr. Baker. Your case is under submission.